IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Robert C. Heins, | : | CIVIL CASE |
|    Plaintiff, | : | |
|                v. | : | |
| | : | |
| Alan Ritchey, Inc., | : | |
|    Defendant. | : | NO. 13-2798 |

**MEMORANDUM RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Baylson, J.**                                                                                                            **June 12, 2014**

**I.    Introduction**

This lawsuit concerns Plaintiff Robert Heins's claim that Defendant Alan Ritchey terminated his employment based on his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq.

Plaintiff filed his Complaint on May 21, 2013.  ECF 1.  Defendant filed its Answer to Plaintiff's Complaint on July 25, 2013.  ECF 10.  On April 18, 2014, Defendant filed the present Motion for Summary Judgment (the "Motion").  ECF 18.  Plaintiff filed his Response in Opposition to the Motion on May 15, 2014.  ECF 21.  Defendant filed a Reply in Support of its Motion on May 22, 2014.  ECF 23.

**II.    Background**

The following facts are not in dispute unless otherwise noted.  Defendant is a multi-industry company that provided various services to government, industrial, agricultural, energy, and transportation clients across the United States.  ECF 18 (the Motion), Ex. 2 (Statement of Undisputed Material Facts) ¶ 1 [hereinafter "Statement of Undisputed Facts"].  During the relevant time period, and until December 2011, Defendant held a contract with the United States

Postal Service ("USPS") in which it acted as a processor of USPS mail transport equipment. Id. ¶ 2.

Defendant employed Plaintiff as the Plant Manager of Defendant's Mail Transportation Equipment Services Center ("MTESC") in Levittown, Pennsylvania (the "Philadelphia Plant"). Id. ¶¶ 5-6. Defendant hired Plaintiff around December 1998, at which time Plaintiff was 57 years old. Id. ¶ 6.

USPS, Defendant's only customer for the mail transport equipment business line, paid Defendant based on the number of pallets it processed. Id. ¶¶ 7-8. Moreover, the contract obligated Defendant to perform various tasks such as inventory checks and issuing placards with bar code information to each pallet for billing purposes. Id. ¶¶ 10-14. USPS personnel, including David Rose, the head of the USPS MTESC division, had consistent oversight and communication with the Philadelphia Plant, and certain USPS employees had a physical presence at the Philadelphia Plant. Id. ¶¶ 14-16.

As Plant Manager, Plaintiff had a number of responsibilities, including: (1) ensuring the accuracy of inventory, inventory checks, and data collection through the Philadelphia Plant; (2) ensuring that personnel and plant complied with Defendant's and USPS's policies; (3) overseeing the Philadelphia Plant's 250 employees; (4) meeting production and quality targets; (5) developing plans for efficient use of materials and personnel; (6) overseeing the process of issuing placards to pallets; and (7) ensuring the timeliness of the loading and unloading process. Id. ¶¶ 18-21.

Around December 2009 or January 2010, the Philadelphia Plant relocated to a new, larger building in response to representations made by USPS that the plant would be receiving higher volume. Id. ¶ 22. At this time, Richard Stroup held the position of CEO of Defendant

and acted as Plaintiff's direct supervisor. Id. ¶ 23. The change in location coincided with USPS's revision of a number of its policies and procedures and USPS's decision to begin processing some of its own product. Id. ¶¶ 24, 27-28. Immediately after the relocation, the Philadelphia Plant began to lose money. Id. ¶ 28.

The Philadelphia Plant continued to lose money until Defendant terminated Plaintiff's employment on August 30, 2010. Id. ¶¶ 47, 49. Between the relocation and Plaintiff's termination, Mr. Rose and other USPS personnel sent a number of emails to Mr. Stroup, regarding incidents of non-compliance with the USPS procedures. Id. ¶¶ 31, 33, 35-37, 39-41.

The parties do dispute the nature of those communications from Mr. Rose and the reasons for Mr. Stroup's decision to terminate Plaintiff. Defendant describes the series of communications from Mr. Rose as "complaints." See, e.g., id. ¶ 30. Plaintiff relies on testimony from Mr. Rose in which he states that he had no concerns about deficiencies in Plaintiff's job performance; Plaintiff did nothing wrong in his role as Plant Manager; and that emails sent by him do not necessarily indicate that there was a problem, but rather just an issue to be addressed. ECF 21 (P.'s Resp. in Opp'n to the Motion), Ex. 1 (Resp. to Statement of Undisputed Facts) ¶ 30-31, 33, 36-37 [hereinafter "Resp. to Statement of Undisputed Facts"]. Defendant also points to other performance issues, including incorrect inventory results, Statement of Undisputed Facts ¶ 35, an issue where certain pallets were being scanned out of the plant's inventory but not loaded onto trucks, id. ¶ 36, placards being printed for payment but not being attached to any pallet, id. ¶ 39, 43, the untimely unloading of trailers, id. ¶ 33, and general issues with a lack of supervision of shift managers, id. ¶ 42. To dispute the import of those supposed performance issues, Plaintiff relies on his own deposition where he testified that the relocation of the factory caused some discrepancy in inventory counts, but that he brought many of them to Mr. Stroup's

attention, who told Plaintiff to "do the best [he could.]"  Resp. to Statement of Undisputed Facts ¶ 35, 38.  Moreover, Plaintiff argues, Mr. Rose testified that similar inventory issues occurred at all of Defendant's other MTESC plants as well.  Id. ¶ 41.  As for the placards, Plaintiff points to testimony from Mr. Rose who stated that the placarding issue did not reflect negatively on the Philadelphia Plant in the eyes of USPS.  Id. ¶ 39.  Finally, Plaintiff disputes that he had problems with shift managers, stating that he had concerns about one shift manager, he brought those concerns to Mr. Stroup, and Mr. Stroup refused to take corrective action.  Id. ¶ 42.  Plaintiff also disputes Defendant's statement that Mr. Stroup discussed these performance issues with him on multiple occasions, Statement of Undisputed Facts ¶ 46, instead stating that Mr. Stroup never told him his job was in jeopardy.[1]  Resp. to Statement of Undisputed Facts ¶ 46.  Plaintiff further states that he maintained excellent job performance ratings, Defendant never issued him a disciplinary warning or write-up, and that Defendant gave Plaintiff a $42,500 bonus, months after the Philadelphia Plant relocation.  Id. ¶ 45.

As a general matter, Plaintiff disputes Defendant's contention that he was terminated due to lack of profitability or poor job performance.  Plaintiff points to several explanations offered by Defendant for Plaintiff's termination as evidence of inconsistency.  First, Plaintiff relies on his Employment Status Form, which Defendant admits first listed "cost reduction" as the reason for Plaintiff's termination but was later changed to state that Plaintiff had been terminated for "poor performance."  Statement of Undisputed Facts ¶ 53.  Plaintiff then points to Defendant's position statement with the PHRC, where Defendant stated that it terminated Plaintiff because he was mismanaging the Philadelphia Plant to the point that Defendant began receiving complaints

---

[1] Defendant counters by citing Mr. Stroup's deposition where he testified that he did discuss Plaintiff's poor performance with him prior to his termination.  ECF 23-1 (Resp. to Pl.'s Counterstatement of Facts) ¶ 8 (citing Ex. C, Stroup Dep. at 40, 63-64).

from USPS.  Resp. to Statement of Undisputed Facts ¶ 48 & Ex. H (Oct. 17, 2011 Letter). Plaintiff also relies on an affidavit from Mr. Stroup, in which Mr. Stroup stated that Plaintiff was terminated due to complaints from USPS.  Id. ¶ 48 & Ex. K (Oct. 26, 2012 Affidavit of Richard Stroup) ¶¶ 4-5 ("Complainant's conduct resulted in complaints from the USPS and jeopardized Respondent's ability to be paid under the terms of its contract with the USPS.").  Plaintiff states that it was not until Defendant answered interrogatories in this litigation, that it first offered lack of profitability as the reason for Plaintiff's termination.  Id. ¶ 48.

The parties do not dispute that Larry Rentz replaced Plaintiff as the Plant Manager at the Philadelphia Plant, although there is some dispute as to when Mr. Rentz assumed that position. Statement of Undisputed Facts ¶ 54; Resp. to Statement of Undisputed Facts ¶ 48.  Mr. Rentz was 48 years old at this time.   Statement of Undisputed Facts ¶ 62.  Defendants state, and Plaintiffs dispute, that Mr. Rentz was chosen to replace Plaintiff because of his experience as a Plant Manager in the MTESC in Long Island and his background in engineering, and in hope that he could help implement automation at the Philadelphia Plant.  Statement of Undisputed Facts ¶¶ 59-60; Resp. to Statement of Undisputed Facts ¶¶ 59-60.

The parties do not dispute that Defendant failed to win the MTESC contract in 2011 and that the Philadelphia Plant closed in December 2001.  Statement of Undisputed Facts ¶ 63.

**III.    Legal Standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must, "by affidavits or as otherwise provided in this rule [ ] set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

**IV.     Discussion**

The ADEA prohibits age discrimination in employment against any person over age forty. 29 U.S.C. § 623(a)(1). "Because the prohibition against age discrimination contained in the ADEA is similar in text, tone, and purpose to that contained in Title VII, courts routinely look to law developed under Title VII to guide an inquiry under ADEA." Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 330 (3d Cir. 1995) (reversing summary judgment for the employer). But a plaintiff must show age discrimination was the "but-for" cause of the adverse action. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009) (holding Title VII mixed-motive theory does not apply to ADEA claims).

The burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) is the appropriate analysis for summary judgment motions in cases alleging

6

employment discrimination.[2]  Brewer, 72 F.3d at 330.  In order to establish a prima facie case of discrimination, the plaintiff must demonstrate the existence of four elements:  (1) he is older than 40; (2) he applied for and was qualified for the position; (3) he suffered an adverse action; and (4) he was replaced by a sufficiently younger person to support the inference of age discrimination.  Sempier v. Johnson & Higgins, 45 F.3d 724, 727 (3d Cir.) (reversing summary judgment for the employer), cert. denied, 515 U.S. 1159 (1995).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action.  Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-56 (1981) (vacating reversal of judgment for the defendant after a bench trial).  The Defendant satisfies its burden of production by introducing evidence, which, if taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (affirming grant of summary judgment for the employer).  The defendant need not prove that the tendered reason actually motivated its behavior because the ultimate burden of proving intentional discrimination always rests with the plaintiff.  Id.

If the defendant is able to come forward with a legitimate, non-discriminatory reason for its action, the plaintiff can defeat a motion for summary judgment by providing evidence from which a factfinder could reasonably either (1) disbelieve the defendant's articulated legitimate reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the defendant's action.  Id. at 764.  "If the plaintiff

---

[2] A plaintiff can also prove age discrimination by direct evidence, but a plaintiff attempting to do so "confronts a 'high hurdle.'"  Anderson v. CONRAIL, 297 F.3d 242, 248 (3d Cir. 2002) (quoting Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998)).  Plaintiff admits, however, that there is no direct evidence of age discrimination in this case.  Resp. to Statement of Undisputed Facts ¶ 64.

produces sufficient evidence of pretext, he need not produce additional evidence of discrimination beyond his prima facie case to proceed to trial." <u>Sempier</u>, 45 F.3d at 731.

For purposes of this Motion only, Defendant has conceded that Plaintiff has presented an issue of fact in support of his prima facie case for age discrimination. ECF 18-1 (Def.'s Mem. of Law in Supp. of the Motion) at 7, n.1. Plaintiffs likewise concede that Defendants have offered a non-discriminatory reason for terminating Plaintiff, although they argue that Defendant has offered several, inconsistent explanations. Defendant's explanation can be boiled down to a contention that Defendant lost profit on its contract with the USPS because the Philadelphia Plant, under Plaintiff's supervision, failed to comply with USPS policies and procedures.

Plaintiff contends that he has offered sufficient evidence of pretext. He argues that the record discredits Defendant's proffered reasons, because (1) Defendant's reason is implausible and directly contradicted by the record, (2) Defendant's articulated reasons for firing Plaintiff have been inconsistent, (3) Defendant lacks credibility, and (4) Defendant treated Mr. Rentz, Plaintiff's replacement, differently, casting doubt on his proferred reason.

This Court finds that a genuine issue of material fact exists as to the true motivation behind Defendant's decision to terminate Plaintiff's employment. The parties dispute the following factual issues: (1) whether and to what extent the Philadelphia Plant failed to comply with USPS policies and procedures, (2) whether Defendant received complaints about the Philadelphia Plant's lack of compliance with those policies and procedures or Plaintiff's job performance, (3) whether Mr. Rose and other USPS employee's communications with Mr. Stroup constituted complaints or run-of-the-mill notifications, (4) whether, at the time, Defendant attributed compliance issues and/or diminishing profits to Plaintiff's job performance or to the plant relocation, and (5) whether Defendant expressed any dissatisfaction to Plaintiff

8

regarding his job performance. Based on the record, and viewing the evidence in the light most favorable to Plaintiff, a reasonable factfinder could conclude that Defendant's proffered reason for terminating Plaintiff's employment lacks credibility and constitute mere pretext.

## V. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is DENIED. An appropriate order follows.

O:\Caitlin\Civil\13-2798 (Heinz)\2014.5.30 MoL on MSJ.docx